UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

ASHUNTE M. CROSSLEY,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Case No. 2:24-CV-391 JD

## OPINION AND ORDER

Plaintiff Ashunte Crossley applied for a period of disability and disability insurance benefits under Title II of the Social Security Act. She also protectively filed a Title XVI application for supplemental security income. In both applications, Plaintiff alleged disability beginning May 1, 2022. Her claims were rejected, leading to a review by an Administrative Law Judge ("ALJ"), who concluded that Plaintiff was not disabled. The Appeals Council later denied her request for review, and Plaintiff now seeks judicial review in this Court. For the reasons below, the Court will remand the case to the Social Security Administration for further proceedings.

**A. Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Still the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant and the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

**B. Standard for Disability**

Disability benefits are available only to those individuals who can establish disability under the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). The claimant must be unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the national economy.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs

in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

### C. The ALJ's Decision

In finding that Plaintiff was not disabled, the ALJ employed the customary five-step analysis. At step two, she found that Plaintiff suffered from the following severe impairments: "bilateral carpal tunnel syndrome (CTS); vertigo/vestibular neuronitis; sensorimotor demyelinating peripheral neuropathy; post-traumatic stress disorder (PTSD); and anxiety." (ALJ's Decision, R. at 13.) At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of [a Listing]" (*id.*), and that the "paragraph C" criteria are not satisfied to establish a serious and persistent mental disorder (*id.* at 14).

The ALJ also recounted Plaintiff's testimony. She noted that Plaintiff alleges disability primarily due to chronic neuropathic pain, that she testified to having a long history of hand pain (including swelling, numbness, tingling, burning, coldness, and weakness to both of her hands), with a more recent worsening of symptomology in her legs and feet. She claimed that the discomfort in the hands is constant, and that she has difficulty with holding, lifting, opening, and picking up objects. Also, Plaintiff complained of unstable balance, which resulted in several falls.

Plaintiff said she has been prescribed Gabapentin and uses Tylenol. According to the ALJ, Plaintiff stated that these medications might help to lessen her pain for a short time, but that the sensation remains present. Plaintiff has undergone bilateral CTS release and attended

physical therapy, but alleged that these methods have also been unsuccessful in improving her symptoms.

Finally, the ALJ noted that for her emotional welfare, Plaintiff was prescribed Buspar by her primary care provider. According to Plaintiff, this medication is helpful, but her symptoms are exacerbated by her physical conditions, and the medication makes her tired all day. She said she can walk about 8 feet before resting and can lift no more than a gallon of milk. Although she has a driver's license, she does not drive due to the pain, weakness, and numbness in her hands. She explained she is able to prepare meals for her family but requires help, mostly with the prepping. (ALJ's Decision, R. at 16–17.)

In determining Plaintiff's residual functional capacity ("RFC"),[1] the ALJ recognized that Plaintiff's medical conditions could reasonably account for the symptoms she described. Even so, the ALJ concluded that Plaintiff's statements regarding the severity, persistence, and limiting effects of those symptoms were not fully consistent with the medical and other evidence in the record:

> Physically, clinical findings have been consistent with her abovementioned impairments, with demonstrated sensory deficits, as well as some strength, gait, and manipulative problems. Still, these issues appear to be adequately managed and controlled with treatment, as clinical examinations show no significant worsening in the claimant's functional abilities. For example, other clinical examinations have documented intact strength and mobility with no neurological or respiratory abnormalities. Nonetheless, the claimant's reported physical limitations have been considered and accommodated in the above residual functional capacity.

(ALJ's Decision, R. at 18.)

---

[1] "The RFC reflects 'the most [a person] can still do despite [the] limitations' caused by medically determinable impairments and is assessed 'based on all the relevant evidence in [the] case record.'" *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) (quoting 20 C.F.R. §§ 404.1545, 416.945(a)).

Likewise, the ALJ found that Plaintiff's emotional well-being, while marked by downturns, was stable overall:

> Emotionally, the claimant's anxiety and PTSD appear well-managed with medication management through her primary care provider. While still experiencing the waxing and waning of her emotional symptoms, the overall records illustrate the claimant has generally remained stable with medication. Additionally, the claimant's examinations have documented overall normal functioning in terms of memory, cognition, attention/concentration, socialization, behavior, and appearance. Nevertheless, the undersigned is cognizant of the waxing and waning nature of these impairments; and has thus accommodated the claimant's allegations in her residual functional capacity. Most notably in the area of social interactions as the objective evidence documents no ongoing deficit in this area but the undersigned has included restrictions based on the claimant's reported subjective complaints of pain, ultimately including a restriction in tandem work and team tasks via only occasional interaction with co-workers to reduce pain in conjunction with pace of work being influenced by a co-worker in performance of tandem tasks or team tasks.

(*Id.*)

The ALJ concluded that Plaintiff has the RFC to perform

> light work[2] . . . except the claimant is limited to no climbing of ladders, ropes, or scaffolds. The claimant is limited to occasional climbing of ramps and stairs. The claimant is limited to occasional balancing, as balancing is defined by the SCO. The claimant is limited to occasional stooping, crouching, crawling, and kneeling. The claimant is limited to occasional handling and fingering bilaterally. The claimant can have no exposure to environmental hazards, such as high exposed places or dangerous moving mechanical parts. The claimant is limited to understanding, remembering, and carrying out detailed but not complex instructions. The claimant is limited to frequent interactions with supervisors but not more than occasional interaction with the coworkers. To limit the duration and intensity of such interactions, there should be no tandem work or team tasks with coworkers. The claimant may have frequent interactions with the general public.

(*Id.*, R. at 15–16.)

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567.

The ALJ posed a hypothetical question to the vocational expert ("VE") based on her RFC findings. The VE testified that there are jobs in the national economy in significant numbers that a hypothetical person with Plaintiff's RFC could perform: school bus monitor (20,000 jobs), counter clerk (10,000 jobs), and usher (20,000 jobs). Relying on the VE's testimony, the ALJ concluded "that, considering [Plaintiff's] age, education, work experience, and residual functional capacity, [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id*., R. at 19.) As a result, the ALJ found Plaintiff to be not disabled.

**C. Discussion**

In her appeal, Plaintiff advances three main arguments. First, she contends that the ALJ erred in formulating Plaintiff's RFC by failing to justify the exertional level of light work and the non-exertional limitations with a narrative grounded in the evidence, as required by SSR 96-8p. Second, she argues that the ALJ erred in her subjective symptoms analysis. In particular, she insists that the ALJ failed to explain why her subjective allegations are inconsistent with the record. Lastly, Plaintiff maintains that the ALJ wrongly relied on the VE's testimony suggesting that a hypothetical individual with Plaintiff's RFC could perform jobs that are obsolete or conflict with the RFC as assessed. The Court only addresses Plaintiff's first argument because it agrees that the ALJ failed to adequately support the RFC with substantial evidence. The parties can address any remaining arguments on remand.

An ALJ is charged with determining an individual's RFC, meaning "what an individual can still do despite his or her limitations." SSR 96-8p. The ALJ makes that determination based on medical evidence as well as other evidence, including testimony by the claimant. *Murphy v.*

*Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted). In making a proper RFC determination, an ALJ must consider all the relevant evidence in the record, even evidence relating to limitations that are not severe. *Id.*; see 20 C.F.R. § 404.1529(a). The ALJ must also "articulate in a rational manner the reasons for his assessment of a claimant's residual functional capacity," *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009), in a way that builds "an accurate and logical bridge from the evidence to the conclusion." *Giles v. Astrue,* 483, 487 (7th Cir. 2007).

> An ALJ's failure to comply with SSR 96-8p's requirements is a sufficient basis, by itself, for us to reverse an ALJ's decision. *See, e.g., Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) ("Contrary to SSR 96–8p, however, the ALJ did not explain how he arrived at these conclusions; this omission in itself is sufficient to warrant reversal of the ALJ's decision."); *Jeske v. Saul*, 955 F.3d 583, 596 (7th Cir. 2020) (explaining that although an ALJ's failure to comply with SSR 96-8p "does not necessarily require remand," we must be satisfied that an ALJ considered SSR 96-8p's requirements and produced a decision supported by substantial evidence). But we may affirm an ALJ's decision that does not conform with SSR 96-8p's requirements if we are satisfied that the ALJ "buil[t] an accurate and logical bridge from the evidence to her conclusion." *Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018) (quotation omitted). Essentially, an ALJ's RFC analysis "must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021).

*Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022).

In response to the ALJ's question at the hearing about how much she can lift, Plaintiff testified that she is able to lift a gallon of milk: "I'm going to say probably like a gallon of milk to, I don't know, like a grease bottle. That's about it." (R. at 57.) She also testified that she can walk only about eight steps before needing to rest. (*Id.*) In her decision, the ALJ acknowledged this testimony (*see* ALJ's Decision, R. at 16 ("In terms of daily activities, the claimant offered she can walk about 8 feet and lift no more than a gallon of milk."), but did not otherwise address it. At most, the ALJ generally concluded that Plaintiff's statements regarding the severity,

persistence, and limiting effects of her symptoms were not fully consistent with the medical and other evidence in the record, and briefly referenced her claims of immobility (*see* ALJ's Decision, R. at 18 ("For example, other clinical examinations have documented intact strength and mobility with no neurological or respiratory abnormalities")), but that statement is too vague for the Court to determine the basis from which the ALJ derived Plaintiff's specific limitations on her maximum ability to lift and walk during an eight-hour workday, so as to limit her to light work, rather than sedentary work *See Rheinheimer v. Saul*, No. 3:20-CV-781-PPS, 2022 WL 154420, at *2 (N.D. Ind. Jan. 18, 2022) ("When an ALJ dismisses a claimant's subjective symptoms, she must follow up with an explanation for the rejection." (citing *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013)). The decision says nothing about Plaintiff's allegation that she can lift at most a gallon of milk. What's more, the ALJ's decision ignores Plaintiff's testimony at the hearing that she can't hold cups for a long time (R. at 55), can't pick up things off the floor and constantly drops items such as cups and combs, and can't comb her own hair (R. at 59). An average gallon of milk weighs roughly 8.6 pounds, *see* USDA Agricultural Marketing Service Dairy Program, https://www.fmmaclev.com/News%20Items/fluid%20milk%20product%20weight%20conversion%20factors%20052716.pdf (last visited January 8, 2026), which, given the dearth of discussion by the ALJ on this subject, calls into question the basis for the ALJ's finding that Plaintiff is capable of performing light work. Simply put, the ALJ has not said "enough to enable review of whether [she] considered the totality of [Plaintiff's] limitations. *Lothridge*, 984 F.3d at 1233.

After all, the ALJ has not discounted Plaintiff's claim that she cannot lift heavier objects than a milk container. At best, the ALJ appears to be neutral on the question. For example, the ALJ acknowledged that, although Plaintiff takes Tylenol and a prescription for Gabapentin, the

9

medications provide pain relief for only a short time and that the sensation of burning, numbness, and tingling persist despite the medications. (ALJ's Decision, R. at 16.) She also recognized that Plaintiff's EMG study of the upper and lower extremities was consistent with sensorimotor demyelinating peripheral neuropathy, and additional diagnoses included bilateral CTS. (ALJ's Decision, R. at 17.) Next, the ALJ observed that Plaintiff underwent a bilateral CTS release in September 2023 and attends physical therapy, and, despite the notes showing improvement, Plaintiff continues to complain to her healthcare providers of paresthesia throughout both upper and lower extremities. The ALJ concludes this recital with a longitudinal perspective:

> Longitudinally, physical examinations have documented instances of hand/finger tenderness, +4/5 grip strength, decreased strength (4/5) to the left side, a wide-based limping gait, and some difficulty with manipulative functions (e.g., pick and grip coin, zip and unzip her jacket, open and close door handles). Otherwise, gait, extremity strength and range of motion, as well as neurological and respiratory findings have generally remained normal/stable.

(*Id.*)

But, "[a] summary of evidence does not replace meaningful analysis." *Vincent G. v. Saul*, No. 2:19CV487-WCL, 2020 WL 3046435, at *6 (N.D. Ind. June 8, 2020) (citing *Perry v. Colvin*, 945 F. Supp. 2d 949, 965 (N.D. Ill. 2013) ("the act of summarizing the evidence is not the equivalent of providing an analysis of the evidence")). Moreover, although the ALJ cites a year and a half of doctor visits (beginning in August 2022 and ending in February 2024) as presenting Plaintiff with normal extremity strength during that period (*see* ALJ's Decision, R. at 17), only the earlier visits—through July 2023—note Plaintiff's strength as intact (*see* R. at 442, 447, 757, 771–72, 783, 788, 792–93, and 1267). The medical notes from the later visits—pre- and post-CTS release—do not have the same references to upper extremity strength and do not appear to contradict Plaintiff's allegations. In fact, in rejecting the State Agency physicians' opinions the ALJ recognized the mixed nature of the doctor reports:

10

> Moreover, though vastly normal, the claimant's physical examinations have cited issues with decreased strength in the upper extremity, an abnormal gait, as well as some manipulative difficulties bilaterally. (e.g., Exhibits 6F/6-10, 13-14; 9F; 10F; 11F/9-13; 12F 17F/5, 18, 25; 18F; 19F/4). Additionally, the claimant's reports of pain, weakness, imbalance, dizziness, and fatigue have been consistently reported to treatment providers. (e.g., Exhibits 6F; 10F; 11F; 12F; 18F; 19F). Thus, the limits in the above residual functional capacity are warranted.

(ALJ's Decision, R. at 18–19.) Such apparent neutrality on Plaintiff's ability to lift is characteristic of the ALJ's decision. While it may be unintentional, it nevertheless interferes with the requirement that the ALJ explain "in a rational manner the reasons for [her] assessment of a claimant's residual functional capacity." *Stewart*, 561 F.3d at 684.

In other words, lacking in the ALJ's decision is any evidentiary basis in a narrative discussion, as required by SSR 96-8p, how the evidence supports her conclusion that Plaintiff can perform light work (recall that light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds and requires a good deal of walking or standing. 20 C.F.R. § 404.1567.) Similarly, while the ALJ recognized that Plaintiff has difficulty manipulating objects (*see* ALJ's Decision at 18), the decision is silent on how the ALJ determined that Plaintiff "is limited to occasional handling and fingering bilaterally." That is to say, there's no "logical bridge" between the evidence and conclusion.

In response, the Commissioner argues that any error is harmless because Plaintiff has not pointed to any doctor's opinion contained in the record that suggest greater limitations than those found by the ALJ (*see* Def.'s Br., DE 19 at 3 (quoting *Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018)) (quoting *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)), and that Plaintiff bears the burden of proof to show that she is disabled. But the Commissioner overlooks that the ALJ did not discredit—intentionally as far as the Court can tell—Plaintiff's allegations of her inability to lift more than 8.6 pounds, so that evidence must be accounted for in the RFC. "It is

11

the duty of the ALJ to consider the entirety of the record when making [her] disability determination; 'the ALJ may not simply ignore evidence.'" *Scott v. Colvin*, No. 1:13-CV-91, 2014 WL 32389, at *4 (S.D. Ind. Jan. 6, 2014) (quoting *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009)). While an RFC determination is subject to harmless error, an error is harmless if, upon examination of the record, the reviewing Court can "predict with great confidence what the result of the remand will be." *Wilder* v. Kijakazi, 22 F.4th 644, 654 (7th Cir. 2022). Yet the Court cannot reach such a conclusion here because of ambiguities in how the ALJ assessed the RFC. Accordingly, the Court will remand this case.

To further aid the parties on remand, the Court makes an observation concerning the parties arguments regarding the ALJ's step five finding. Plaintiff maintains that the ALJ improperly relied on the VE's testimony suggesting that a hypothetical individual with Plaintiff's RFC could perform jobs that are obsolete or conflict with the RFC as assessed. Plaintiff argues that the job of a school bus monitor is precluded by the no tandem work limitation in the RFC because a school bus monitor must work alongside the bus driver. Plaintiff also asserts that a school bus monitor must interact with the public more frequently than allowed by the RFC. Plaintiff further contends that the counter clerk job,[3] as described in the DOT, is obsolete, and the usher job is precluded by the frequency of required interactions with the public.

In his response, the Commissioner did not address the merits of Plaintiff's contentions, arguing instead that Plaintiff forfeited the argument because her attorney did not question the basis for the VE's testimony. For this proposition, the Commissioner relies on *Donahue v.*

---

[3] Although not labeled as such, this position is effectively a photo processing clerk job of yesteryear, requiring the worker to receive and load customers' photo film into processing equipment, retrieve completed photos, assist customers with photo supplies, and collect payment, among other duties. *See* DOT 249.366-010, 1991 WL 672323.

*Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). But the Seventh Circuit has held "that because SSR 00–4p imposes an affirmative duty on the ALJ to inquire into and resolve apparent conflicts, a claimant's failure to raise a possible violation of SSR 00–4p at the administrative level does not forfeit the right to argue later that a violation occurred." *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (citing *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006)). "Still, the failure of [the plaintiff's] counsel to identify the conflicts at the time of the hearing is not without consequence. [The plaintiff] now has to argue that the conflicts were obvious enough that the ALJ should have picked up on them without any assistance, for SSR 00–4p requires only that the ALJ investigate and resolve apparent conflicts between the VE's evidence and the DOT." *Id.*

To avoid such back-and-forth and litigating unnecessary issues, the Court urges the parties to take care, on remand, to test the VE's methodology if warranted, so that any issues can be decided on the merits, with both sides contributing to the discussion.

### E. Conclusion

For these reasons, the Court REVERSES the Agency's decision and REMANDS this matter to the Agency for further proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: January 14, 2026

　　　　　　　　　　　　　　　　　　　　/s/ JON E. DEGUILIO
　　　　　　　　　　　　　　　　　　Judge
　　　　　　　　　　　　　　　　　　United States District Court